**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **SPARK MULTINATIONAL, LLC** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. _____** |
| **YONG XING LIMITED** | § | |
| | § | |
| *Defendant.* | § | |
| | § | |
| | § | |
| | § | |
| | § | |

## <u>PLAINTIFF'S COMPLAINT</u>

Plaintiff Spark Multinational, LLC ("Spark") files this Complaint against Defendant Yong Xing Limited ("Yong Xing"), and respectfully shows the Court as follows:

## I.    <u>INTRODUCTION</u>

1.      In August 2020, Yong Xing agreed to sell 8,200 cases[1] of nitrile examination gloves to Spark for $639,600. Spark paid for the gloves promptly—before delivery—in good faith and in reliance upon Yong Xing's promises to deliver conforming goods. Spark's trust in Yong Xing was misplaced. Upon delivery, Spark discovered that the delivered gloves were not only different in terms of amount, size, color, and type from what Spark paid for, they were defective, contaminated and otherwise not fit for sale. Most egregiously, Yong Xing sent a "sample" case of *correct, non-defective* gloves to Spark for approval before shipping the entire order—what amounts to a classic "bait-and-switch." Yong Xing breached its agreement and plainly committed

---

[1] Each of the 8,200 "Master Cases" were to contain 10 "inner cases" of 100 ambidextrous nitrile examination gloves, for a total of 8.2 million gloves.

fraud.  Nevertheless, Yong Xing refuses to fully refund Spark or otherwise remedy its failure despite Spark's timely demand.

2.      Yong Xing ignored a demand letter sent by counsel for Spark and has otherwise refused to engage in a good faith effort to resolve this dispute.  Spark therefore brings this action to recover for the damages it has incurred as a result of Yong Xing's breach and fraudulent actions.

## II.    PARTIES

3.      Plaintiff Spark Multinational, LLC is a Texas limited liability company with its principal place of business in El Paso, Texas.

4.      Defendant Yong Xing Limited is a Chinese company with its principal place of business located at No. 4 Industrial Zone, Xinwei, XinZhuang Community, MaTian Street, GuangMing District, Shenzhen City, China 518106 and does not maintain a registered agent in the State of Texas or United States.  Upon information and belief, "Yong Xing Limited" also includes its identifiable subsidiaries and/or affiliates, Yong Xing Sports Limited and Yong Xing International Limited.

## III.    JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as this dispute is between citizens of a State and citizens or subjects of a foreign state; and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6.      This Court has personal jurisdiction over Yong Xing based on its sufficient minimum contacts with the State of Texas.  Yong Xing sold its products to and contracted with a Texas company located in the Western District of Texas.  Furthermore, the majority of the complained-of-acts occurred in the Western District of Texas.  *See Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007).

4860-9141-4530.2

7.      Venue is proper in the Western District of Texas under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in the Western District of Texas.

## IV.    FACTUAL BACKGROUND

8.      Yong Xing is an international trading and export company located in Shenzhen, China.  Spark is an international trading company located in El Paso, Texas.  In the midst of the Coronavirus pandemic, Spark sought to purchase personal protective equipment (PPE) to sell to regional medical facilities and businesses.  Spark was referred to Yong Xing by a trusted broker, Héctor Cortes, and proceeded to negotiate the purchase of several products.

9.      In August 2020, Yong Xing agreed to sell 8,200 cases of latex-free, powder-free nitrile examination gloves to Spark for $639,600, plus shipping costs.  *See* **Ex. A**, Proforma Invoice.[2]  In negotiating the sale, Yong Xing sent multiple "sample" cases to Spark for inspection and approval.  Several times, Yong Xing sent "sample" cases to Spark only to renege on its promises to provide the brand of gloves advertised in the samples.  Finally, after Spark threatened to cancel the order, Yong Xing sent a "proposal" on August 7, 2020 for Sri Trang-brand gloves, describing these as "the safest option," and provided a new "sample" case for approval.  *See* **Ex. D**, July 29, 2020 Communication from Horacio Arras; **Ex. E**, Aug. 7, 2020 Communication from Yong Xing.

10.     This "sample" case appeared to be compliant with Spark's order: latex-free, powder-free, blue nitrile examination gloves in small, medium and large sizes, all in perfect condition and correct packaging.

---

[2] Exhibit A reflects a sale of 8,000 cases for $624,000.  Prior to shipment, the order was modified to include 200 more cases of the same glove type at the same unit price.  This increase in quantity is reflected by Ocean Freight Services invoices, attached hereto as **Exhibits B** and **C**.

3

11.     In light of this "sample" case, Spark approved the order and paid for a portion of the gloves.  After shipping the gloves, Yong Xing provided Spark with an inspection report by Intertek—purportedly inspecting the gloves shipped to Spark—showing that the shipment conformed with all inspection criteria including quantity, quality, workmanship, and labeling.  *See* **Ex. F**, Intertek Inspection Report.  Believing it would receive gloves reflective of the "sample" case and inspection report, Spark then paid for the order <u>in full</u>—before delivery.  Spark also paid over $50,000 for all costs associated with the delivery, including ocean freight charges, import taxes, and custom broker fees.

12.     Spark purchased gloves from Yong Xing in order to fulfill a contractual obligation to its largest customer as well as to sell on the open market.  Believing that the "sample" case was representative of the entire order, and that the Intertek Inspection Report was accurate, Spark arranged for delivery to its customer.  Regrettably, the inspection report proved to be false, and the "sample" case proved to not be a sample at all, but an element of Yong Xing's fraud.

13.     The gloves ultimately delivered by Yong Xing were non-compliant with Spark's order and did not match those provided in the "sample" case.  The delivered gloves were made of latex, had powder, were the wrong colors and sizes, and packaged with false labeling (e.g., an inner box of "100" gloves would contain 50 or less).  *See* **Ex. G**, IQS Inspection Report.  Furthermore, many gloves were used, broken, or otherwise not fit for sale. *See, e.g.*, **Ex. H**, Picture of Delivered Gloves.

14.     Upon receipt of the defective gloves, Spark's customer rejected the delivery and Spark was left to warehouse the gloves and scramble to cover its order.  This caused irreparable damage to Spark's customer goodwill and forced it to buy gloves on the open market at a premium in order to fulfill its contractual obligations with its customer.  Furthermore, given the delay, Spark

4

lost the opportunity to sell gloves as planned on the open market and therefore suffered major opportunity costs.

15.     That Yong Xing failed to deliver what Spark paid for is not in dispute. Acknowledging this failure, Yong Xing provided Spark with a $100,000 refund and $41,806 credit.  *See* **Ex. I**, Wire Transfer from Yong Xing; *see* **Ex. J**, Oct. 27, 2020 Communication from Yong Xing.  However, this only remedied a small fraction of the damages suffered by Spark and did not even reimburse for half of what Spark paid for the gloves.

16.     When Spark demanded full repayment, Yong Xing requested Spark ship 100 cases to Cambodia—where the gloves shipped out of—for an "inspection."  Spark did so, incurring all the costs of shipment to Cambodia, but to no avail.  *See* **Ex. K**, Shipping Costs.  Yong Xing still refused to refund the rest of Spark's money.

17.     Additionally, Yong Xing arranged for a third-party inspection of the delivered gloves in El Paso, Texas through Insight Quality Services (IQS).  The Inspection Report concluded that the gloves <u>failed</u> in terms of "Packaging and Labeling," "Product Description," and "Workmanship."  *See* **Ex. G**.

18.     After over a year attempting to resolve the dispute outside of litigation, counsel for Spark sent a demand letter to Yong Xing on September 1, 2021 demanding reimbursement and compensation for damages associated with Yong Xing's conduct.  *See* **Ex. L**, Demand Letter. Yong Xing did not respond.  Spark now has no choice but to file this lawsuit.

### V.    <u>CONDITIONS PRECEDENT</u>

19.     All conditions precedent to filing this lawsuit have been met.

4860-9141-4530.2

# VI.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT

20.    The factual allegations contained in Paragraphs 1 to 18 are incorporated for all purposes as if fully set forth herein.

21.    The elements of a breach-of-contract claim are "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Intern., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citing *Valero Mktg. & Supply Co. v. Kalama Int'l, LLC*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)).

22.    Spark and Yong Xing entered into a valid and enforceable contract.  Yong Xing offered to provide Spark with 8,200 cases of nitrile examination gloves in exchange for $639,600 and Spark accepted.  Both parties are commercial actors with capacity to enter into contract, and the purpose of the contract is plainly legal.

23.     Spark fully performed its contractual obligation by paying Yong Xing prior to delivery of the gloves.

24.    Yong Xing breached the agreement by delivering gloves that were either defective or not in compliance with Spark's order.  Spark paid for blue, latex-free, powder-free, nitrile examination gloves in separately packaged small, medium, and large sizes.  What Yong Xing delivered were latex and powder gloves in a variety of colors, packaged with false labeling. Furthermore, a substantial portion of the gloves were used, broken, and/or otherwise not fit for sale—which destroyed Spark's capacity to cover its losses by selling them on the open market.

25.    Spark has suffered damages directly resulting from Yong Xing's breach, including, but not limited to, actual damages, opportunity costs, and damage to goodwill.

26.     Furthermore, as a result of Yong Xing's breach, Spark was required to retain the services of the undersigned counsel. Spark is entitled to all damages, reasonable attorneys' fees, and court costs incurred in the prosecution of this matter and through all appeals, pursuant to Section 38.001(8) of the Texas Civil Practice and Remedies Code.

### SECOND CAUSE OF ACTION
### VIOLATION OF TEXAS DECEPTIVE TRADE PRACTICES ACT

27.     The factual allegations contained in Paragraphs 1 to 25 are incorporated for all purposes as if fully set forth herein.

28.     The elements of a Texas DTPA claim are: (1) the plaintiff was a consumer; (2) the defendant either engaged in false, misleading or deceptive acts or engaged in an unconscionable action or course of action; and (3) the violation or unconscionable action was a producing cause of plaintiff's injury. *Walker v. Nationwide Prop. And Cas. Ins. Co.*, 992 F. Supp. 2d 703, 707 (W.D. Tex. 2014) (*citing Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996)).

29.     Yong Xing engaged in false, misleading and/or deceptive acts or practices in selling defective gloves to Spark, thereby violating the Texas Deceptive Trade Practices Act ("DTPA"). *See* TEX. BUS. & COM. CODE § 17.46, *et seq*.

30.     Spark is a "consumer" as defined in Section 17.45(4) of the DTPA because it is a limited liability company with less than $25 million in assets that is not owned or controlled by an entity with assets of $25 million or more.

31.     Yong Xing's violations of the DTPA include its commission of the following false, misleading and deceptive acts or practices, listed in the following provisions of the DTPA:

- Section 17.46(b)(6): representing that goods are original or new if they are deteriorated, reconditioned, reclaimed, used, or second-hand.  Yong Xing represented that the new gloves in the "sample" case were reflective of the full

4860-9141-4530.2

order—they were not.  Furthermore, Yong Xing provided Spark with an inspection report by Intertek showing that the gloves conformed in terms of workmanship—they did not.  The gloves ultimately delivered were used, broken and/or otherwise not fit for sale.

- Section 17.46(b)(9): advertising good or services with intent not to sell them as advertised.  Yong Xing advertised goods in the "sample" case with no intention of providing goods reflective of those advertised in the "sample" case.

32.    Yong Xing's violations of the DTPA were a producing and/or proximate cause of actual damages to Spark.

33.    Spark is entitled to recovery of its actual damages, consequential damages, costs of court, its reasonable and necessary attorneys' fees, and pre- and post-judgment interest as allowed by the law for Yong Xing's violations of the DTPA.

34.    Further, because Yong Xing knowingly and/or intentionally violated the DTPA, Spark is entitled to treble damages under Section 17.50(b)(1) of the DTPA.  *See* TEX. BUS. & COM. CODE § 17.50(b)(1).

### THIRD CAUSE OF ACTION
#### FRAUDULENT INDUCEMENT

35.    The factual allegations contained in Paragraphs 1 to 33 are incorporated for all purposes as if fully set forth herein.

36.    The elements of a fraudulent inducement claim are: (1) defendant made a material misrepresentation that (2) was false, (3) and was either known to be false when made or was asserted without knowledge of its truth, (4) the defendant intended the representation to be acted upon, (5) it was relied upon, and (6) it caused injury.  *Jacked UP, LLC v. Sara Lee Corp.*, 854 F.3d 797, 810 (5th Cir. 2017).

4860-9141-4530.2

37.    Intending to induce Spark to purchase the gloves, Yong Xing provided a "sample" case of non-defective gloves that complied with the specifics of Spark's order.  Yong Xing represented that the "sample" case was reflective of the entire order it would ship.  Yong Xing also provided a false inspection report, showing that the shipment of gloves conformed with all inspection criteria.

38.    These representations proved to be false.  Yong Xing delivered gloves that were not compliant with Spark's order and did not reflect the gloves provided in the "sample" case or considered in the inspection report.

39.    Yong Xing made false representations with knowledge of their falsity or utter disregard and recklessness at to falsity, with an intent to mislead Spark into purchasing the gloves.

40.    Spark justifiably relied on these misrepresentations and entered into a binding agreement on account of Yong Xing's fraud.  After approving the "sample" case and reviewing the inspection report, Spark paid for the order in full.  Spark would not have entered into the agreement and paid Yong Xing in full but for the "sample" case containing the correct, non-defective gloves and inspection report purporting to show the good quality of the gloves.

41.    Spark suffered actual damages as a result of Yong Xing's fraudulent inducement.

42.    Because Yong Xing committed this misconduct willfully, intentionally, and knowingly, Spark seeks exemplary and punitive damages under Texas Civil Practice & Remedies Code section 41.003(a).

### FOURTH CAUSE OF ACTION
### MONEY HAD & RECEIVED

43.    The factual allegations contained in Paragraphs 1 to 41 are incorporated for all purposes as if fully set forth herein.

4860-9141-4530.2

44.     The elements of a cause of action for money had and received are 1) the defendant holds money that 2) belongs to the plaintiff in equity and good conscience. *Bates Energy Oil & Gas v. Complete Oilfield Services*, 361 F. Supp. 3d 633, 660 (W.D. Tex. 2019) (quoting *Staats v. Miller*, 243 S.W.2d 686, 687-88 (Tex. 1951)).

45.     Yong Xing holds money that, in equity and good conscience, belongs to Spark. Spark paid $639,600 to Yong Xing before delivery of the gloves.  Yong Xing failed to provide what Spark paid for, admits its failure, yet refuses to fully refund Spark.  Yong Xing should not be allowed to unjustly enrich itself at Spark's expense.

46.     Furthermore, Spark's injuries resulted from Yong Xing's gross negligence, malice, or actual fraud, which entitles Spark to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a).

## FIFTH CAUSE OF ACTION
### UNJUST ENRICHMENT

47.     The factual allegations contained in Paragraphs 1 to 45 are incorporated for all purposes as if fully set forth herein.

48.     Unjust enrichment occurs when a person has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain. *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App.—Dallas 2009, pet. denied).  A person is unjustly enriched when he obtains a benefit from another by fraud, duress, or the taking of an undue advantage. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992); *see also Rangel v. Adtalem Global Education, Inc.*, 2019 WL 6828298, *7 (W.D. Tex. Dec. 13, 2019).

49.     Yong Xing received a benefit, including the receipt of funds that Spark paid in exchange for 8,200 cases of latex-free, powder free, nitrile examination gloves.  Yong Xing did

not deliver the gloves that Spark paid for. Therefore, the benefit Yong Xing received, in equity, rightfully belongs to Spark.

50.    Yong Xing obtained this benefit from Spark by fraud. As a result, Spark is entitled to recover the value that Spark paid to Yong Xing so that Yong Xing is not unjustly enriched at Spark's expense.

## VII.    ATTORNEYS' FEES & COSTS

51.    Spark requests an award of its reasonable and necessary attorneys' fees in bringing these claims founded on breach of contract, as authorized by Section 38.001(8) of the Texas Civil Practices and Remedies Code or as otherwise authorized by law.

## VIII.    PRAYER FOR RELIEF

WHEREFORE, in consideration of the foregoing, Spark respectfully requests this Court provide the following relief:

a.  judgment against Yong Xing for the causes of action alleged against it;

b.  actual damages, including lost profits and other damages, in an amount to be proved at trial, stemming from Yong Xing's conduct;

c.  exemplary and punitive damages in the maximum amount permitted under the law awarded against Yong Xing;

d.  treble damages;

e.  pre- and post-judgment interest at the highest rate allowable by law;

f.  reasonable attorneys' fees, costs, and expenses incurred by Spark; and

g.  all such other relief, legal or equitable, to which it may be justly entitled.

**Dated: January 20, 2022**                    BAKER & HOSTETLER LLP

By: */s/ Matthew Caligur*___
Matthew Caligur
Texas Bar No. 24031778
Aidan K. Slavin
(pending W.D. Texas Bar admission)
Texas Bar No. 24121129
BAKER & HOSTETLER, LLP
811 Main St., Suite 1100
Houston, Texas 77002
Phone: (713) 331-8456
Fax: (713) 751-1717
mcaligur@bakerlaw.com
aslavin@bakeraw.com

**COUNSEL FOR PLAINTIFF SPARK
MULTINATIONAL, LLC**

4860-9141-4530.2